ISLAND CREEK COAL SALES COMPA-NY, Foreston Coal International Inc., John K. Irish & Co., Inc., Jno. McCall Coal Export Corp., Seneca Coal Corp., Stinnes Coal Co., United Eastern Coal Sales Corp., and A. L. Watson Co., Inc., Petitioners,

v.

INTERSTATE COMMERCE COMMIS-SION and United States of America, Respondents,

and

Association of American Railroads, Intervening Respondent.

No. 76–1118.

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1977.

Decided Sept. 27, 1977.

Walter J. Myskowski, Washington, D. C., for petitioners.

Thomas C. Dorsey, Hollis G. Duensing, Ass'n of American Railroads, Washington, D. C., Paul C. Kunkel, of Kunkel & Kunkel, Cincinnati, Ohio, for intervening respondent Association.

Fritz R. Kahn, Gen. Counsel, I.C.C., Washington, D. C., Raymond Michael Ripple, Arthur J. Cerra, Charles H. White, Jr., Edward H. Levi, Atty. Gen. of United States, Dept. of Justice, Catherine G. O'Sullivan, Barry Grossman, Bruce B. Wilson, Washington, D. C., for respondents.

Before PHILLIPS, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

PHILLIPS, Chief Judge.

This case is before the court on a petition to review, set aside and annul an order of the Interstate Commerce Commission (ICC).[1]

Eight shippers challenge the legality of demurrage charges[2] collected from them by several railroads under an ICC order. The demurrage charges were collected on various shipments of coal and coke which had been transported to east coast ports for export.

Immediately prior to 1970, the carriers were permitted under ICC tariffs to collect demurrage charges of $3.50 per day for cars carrying coal to North Atlantic ports. In 1970 the railroads were faced with a critical shortage of cars. In an effort to cut down on delays in the delivery of coal and the tie-up of railroad cars, the Commission issued Car Service Order No. 1050, which among other things, doubled the demurrage charges for coal cars and altered the method for computing demurrage credits. These changes were effective between October 1, 1970, and December 31, 1970. On November 27, 1972, the petitioners filed a formal complaint with the Commission, contending

---

1. No. 35760, *Foreston Coal International Inc., et al. v. The Baltimore & Ohio Railroad Co., et al.*, order dated December 1, and served December 9, 1975. This order denied a petition for reconsideration of the Report and order of the Commission dated April 21 and served May 2, 1975, reported at 349 I.C.C. 495.

2. Demurrage is compensation charged by a carrier for undue detention of its equipment. "All demurrage charges have a double purpose. One is to secure compensation for the use of the car and of the track which it occupies. The other is to promote car efficiency by providing a deterrent against undue detention." *Turner, Dennis & Lowry Lumber Co. v. Chicago M. & St. P. Ry.*, 271 U.S. 259, 262, 46 S.Ct. 530, 531, 70 L.Ed. 934 (1926).

that the increased charges had not been properly promulgated and that they were unjust and unreasonable. The complaint sought to have the increased demurrage declared illegal and asked for a refund of the excess charges. After hearings, an administrative law judge found the demurrage charges to be unlawful and ordered that reparations be paid. On May 2, 1975, Division 2 of the Commission overruled the decision of the administrative law judge, finding that the Commission had jurisdiction to issue Car Service Order No. 1050 and that the order was self-executing. The Commission's order further held that the shippers had not sustained their burden of proof that the demurrage charges were unjust and unreasonable. On December 9, 1975, Division 2, acting as an appellate division of the Commission, denied a petition for reconsideration. A stay pending appeal was denied by the Commission on January 21, 1976. The petition to review here under consideration thereupon was filed. The Association of American Railroads was permitted to intervene as a respondent in this court.

## I.

The Government contends that this court has no jurisdiction to review the order of the Commission involved in this proceeding.

Relying on 28 U.S.C. § 1336(a),[3] the Government asserts that the order here sought to be reviewed is "for the payment of money" and is reviewable only by a United States district court, and not by a United States court of appeals. We reject this contention.

Prior to 1975 judicial review of ICC decisions was vested primarily in three-judge district courts.[4]

The principal exception was the grant of jurisdiction to one-judge district courts to review ICC orders "for the payment of money or the collection of fines, penalties and forfeitures." The leading case interpreting this exception is *United States v. Interstate Commerce Commission*, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949). There the Supreme Court held that challenges to ICC orders denying reparations, like challenges to enforcement of ICC orders granting reparations, were rooted in determinations of money damages and should be presented in a one-judge district court. The court ruled that "orders relating *merely* to the payment of money are not likely to be of sufficient public importance to justify use of the three-judge procedure." (emphasis added). *Id.* at 442, 69 S.Ct. at 1419.

On January 2, 1975, Congress eliminated the cumbersome three-judge district court procedure for review of ICC orders, effec-

---

3. § 1336. **Interstate Commerce Commission's orders**

(a) Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, in whole or in part, any order of the Interstate Commerce Commission, and to enjoin or suspend, in whole or in part, any order of the Interstate Commerce Commission for the payment of money or the collection of fines, penalties, and forfeitures.

4. The pertinent statutes provided in part:
[28 U.S.C.]
§ 1336. **Interstate Commerce Commission's orders**

Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission.
Act of June 25, 1948, ch. 646, 62 Stat. 931, as amended by Act of Aug. 30, 1964, Pub. L. No. 88–513, § 1, 78 Stat. 695.

[28 U.S.C.]
§ 2321. **Procedure generally; process**

The procedure in the district courts in actions to enforce, suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission *other than for the payment of money or the collection of fines, penalties and forfeitures,* shall be as provided in this chapter. (emphasis added).
Act of June 25, 1948, ch. 646, 62 Stat. 969.
[28 U.S.C.]
§ 2325. **Injunction; three-judge court required**

An interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of any order of the Interstate Commerce Commission shall not be granted unless the application therefor is heard and determined by a district court of three judges under section 2284, ch. 646, 62 Stat. 970.

tive as of March 1, 1975, and transferred this jurisdiction to the courts of appeals. Pub. L. 93–584, 88 Stat. 1917.[5] However, the amendment conferring jurisdiction on courts of appeals did not change the effect of 28 U.S.C. § 1336,[6] vesting in one-judge district courts jurisdiction with respect to orders relating merely to the payment of money. The 1975 amendment to § 2321(b) expressly excepts from the jurisdiction of courts of appeals orders "for payment of money or the collection of fines, penalties and forfeitures." [7]

█ Nothing in the legislative history of the act [8] indicates an intention to vest in courts of appeals any jurisdiction with respect to ICC orders other than the jurisdiction previously exercised by three-judge district courts. Under the new statute, actions to enjoin or suspend ICC orders are now brought to the courts of appeals, with single-judge district courts retaining jurisdiction to enjoin or suspend ICC orders for the payment of money or collection of fines. *Southern Railway Company v. United States,* 412 F.Supp. 1122, 1126 n.1 (D.D.C. 1976). Thus, actions for review of orders regarding monetary matters only are adjudicated by single-judge district courts pursuant to 28 U.S.C. § 1336(a). *See, e. g., Carothers v. Western Transportation Company,* 412 F.Supp. 1158 (S.D.Ill.1976). Attacks upon the validity of ICC orders are to be filed in the appropriate court of appeals pursuant to 28 U.S.C. §§ 2321(a) and 2342(5).

█ The jurisdiction question, then, is whether, prior to the 1975 amendment, the Commission's order in the present case would have been reviewed by a three-judge

district court or one-judge district court. *Aluminum Company of America v. Interstate Commerce Commission,* 553 F.2d 1268, 1270 (D.C. Cir. 1977). We hold that this action would have been within the jurisdiction of a three-judge district court prior to the 1975 amendment, and that the petition to review presents issues within the jurisdiction of this court under 28 U.S.C. § 2321.[9]

Petitioners are seeking more than mere reparations from railroads to which they paid allegedly excessive demurrage charges. They ask for more than money. They challenge the fundamental power of the Commission to issue Car Service Order No. 1050 and the method used to promulgate the demurrage increases. Seeking refund of the charges paid pursuant to the Commission's order is collateral to the attack upon the order itself.

We, therefore, conclude that this case involves more than an order for the payment of money and is within the jurisdiction of this court. *See Interstate Commerce Commission v. Oregon Pacific Industries,* 420 U.S. 184, 95 S.Ct. 909, 43 L.Ed.2d 121 (1975).

## II.

█ On the merits of this case, we hold that the Commission had authority to adopt Car Service Order No. 1050, that the order was self-executing, and that the Commission correctly found demurrage charges therein were properly established. *Interstate Commerce Commission v. Oregon Pacific Industries, Inc., supra,* 420 U.S. 184, 95 S.Ct. 909, 43 L.Ed.2d 121. We further hold that Car Service Order No. 1050 was not

---

5. **§ 2321. Judicial review of Commission's orders and decisions; procedure generally; process**

   (a) Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in the court of appeals as provided by and in the manner prescribed in chapter 158 of this title. 28 U.S.C.A. § 2321 (Supp. 1977).

6. *See* n. 3, *supra.*

7. 28 U.S.C. § 2321(b)

(b) The procedure in the district courts in actions to enforce, in whole or in part, any order of the Interstate Commerce Commission other than for payment of money or the collection of fines, penalties, and forfeitures, shall be as provided in this chapter.

8. H.R. Rep. No. 93–1569, 93d Cong., 2d Sess., (1974), *reprinted in* [1974] U.S. Code Cong. & Ad. News 7025; S.R. Rep. No. 93–500, 93d Cong., 1st Sess., (1973).

9. *See* n.5, *supra.*

made ineffective by the failure of the railroads to publish an appropriate tariff supplement. *Armour & Co. v. Louisiana Southern Ry. Co.*, 190 F.2d 925 (5th Cir.), *cert. denied*, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1951). Finally, we agree with the Commission's decision that the shippers failed to prove that the demurrage charges were unjust and unreasonable.

Accordingly, the decision of the Commission is affirmed. No costs are taxed. All parties will bear their own costs in this court.